UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMLNT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/21/11
```

IAN BENARDO,

        Plaintiff,

    against

AMERICAN IDOL PRODUCTIONS, INC.,

        Defendant.

11-CV-0625 (CM)

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

McMahon, J.

    Ian Benardo commenced this action against American Idol Productions, Inc. ("AIP") alleging both employment discrimination based on his gender and hostile work environment. Currently before the courts is AIP's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). For the following reasons, AIP's motion to dismiss is granted.

### I.   BACKGROUND

    Ian Benardo is a man who describes himself as having a "non-conforming appearance based on gender stereotype" – which the court understands to mean that he appears to conform to a stereotype of an effeminate homosexual male.

    Benardo has appeared three times on the popular television talent search show American Idol.

    In 2006, Benardo was one of the individuals whose audition for Idol was broadcast on the opening show of the season. As viewers everywhere know, these "audition" shows feature only a few of the thousands of people who appear and sing for the judges in the hope of being chosen

1

for theatrical competition. The "audition" show features the performances of the individuals contestants who win a place on Idol, and some who just miss the cut, but also a number of individuals who never had a realistic chance of being chosen – often persons with little or no talent, who are content to make fools of themselves (or to allow others to make fools of them) in front of a national television audience. For the 2006-2007 season, Benardo was apparently one of these.[1]

He obviously made an impression on the audience because Benardo was asked to return to Idol for the 2006-2007 season finale in May 2007. He also appeared at a number of promotional events associated with this season-ending show.

Finally, Benardo, along with other past contestants who lingered in the public memory for one reason or another, put in an appearance when long-time Idol judge (and founding producer) Simon Cowell did his last show on May 26, 2010.

According to the complaint, on each of these occasions Benardo – who alleges that he was hired as an "employee" of defendant American Idol Productions, Inc. (AIP) – was subjected to discrimination and harassment based on his sex. During the "audition," he alleges that AIP employees asked him to "gay it up" on camera "to exploit....Mr. Benardo's non-conforming appearance based on gender stereotype." (Cplt. ¶ 17). At one of the promotional events for the end-of-season event, Benardo was asked to wear women's clothing, and unnamed AIP employees allegedly addressed him by belittling terms like "fag" and "homo." (Cplt. ¶ 19). And AIP actually conditioned Benardo's appearance on Cowell's last show on his willingness to act "outrageous," "extra flamboyant," and "really gay" to the greatest extent possible, albeit

---

[1] The public humiliation of the untalented on the early episodes of the early years of American Idol was amply documented in the press See, e.g., A. J. Frutkin, Everybody Loves a Loser, N.Y. Times, Jan. 18, 2004, § 1, at 1 ("Never before has a talent show judge offered such harsh words for would-be singers."). It is the court's understanding that this aspect of the show has been toned down in recent years.

2

"without using profanity." (Cplt. ¶ 21). At this last event, AIP allegedly staged, or at least condoned, an on-air verbal confrontation between Benardo, Cowell (who was notorious for his belittling of contestants and generally nasty behavior) and comedian Dane Cook. Off camera, an AIP employee allegedly said to Benardo that he would "shove a mic up you're a.., but you would like it," while one of Cook's representatives (who is not alleged to have had anything to do with AIP) called Benardo a "f…..king freakin faggot." (Cplt. ¶¶ 23-24). Eventually security personnel had to escort Benardo to his hotel, after AIP producers revealed that he had been threatened. (Cplt. ¶ 25).

This last incident was, apparently, too much for Benardo. Shortly thereafter, He complained to the Equal Employment Opportunity Commission (EEOC) that he was the victim of sex discrimination. He also filed a lawsuit in this court, which was dismissed without prejudice because Benardo had not obtained a right to sue letter. Benardo v. Am. Idol Prod., No. 10 Civ. 6487 (S.D.N.Y. Dec. 6, 2010). He subsequently got the letter and recommenced his lawsuit, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1965 as amended, 42 U.S.C. § 2000(e) et seq., the New York State Human Rights Law, N.Y. Exec. L. § 296 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code §8-107 et seq.

AIP moves to dismiss the complaint.

The motion is granted.

## II. DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950-51.

In Swierkiewicz v. Sorema, 534 U.S. 506 (2002), held that plaintiffs need not plead a prima facie discrimination claim to withstand 12(b)(6) dismissal. Twombley explicitly left Swierkiewicz intact. Twombley, supra. Reconciling the two, "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.'" Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (quoting Fowler v. Scores Holding Co., 677 F.Supp.2d 673, 679 (S.D.N.Y. 2009)).

Finally, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). For purposes of the present motion, I will therefore accept – because I must accept – Benardo's allegation that he was an "employee" of AIP on each of the three separate occasions when he appeared on American Idol.

4

A. BENARDO'S FEDERAL CLAIMS ARE DISMISSED

> *1)   Benardo Fails to Allege a Viable Claim for Gender Discrimination Because He Fails to Plead that He Suffered Any Sort of Adverse Employment Action.*

In order to make out a prime facie case of employment discrimination based on gender stereotyping under Title VII, a plaintiff must show four things: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." Swierkiewicz, 534 U.S. at 510 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). As noted above, Plaintiff need not plead a prima facie case at the pleading stage. However, a complaint containing factual allegations that preclude the existence of any element of a prima facie case cannot possibly raise a claim that is "facially plausible."

While AIP suggests several reasons why plaintiff's complaint fails to allege discrimination that is banned by Title VII, for our purposes we need address only one of those contentions: AIP argues that Benardo did not suffer any adverse employment action as a result of AIP's discrimination against him.

AIP is correct.

An "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc., v. Ellerth, 524 U.S. 742, 761 (1998). In his complaint, Benardo does not allege that his "employment status" changed

5

in the slightest particular as a result of purported discrimination against him.[2] He pleads that he was "hired" by AIP for a limited period – to appear on three shows, and some promotional events in connection with the second of those shows. He admits that he was paid for each appearance; no facts are alleged tending to suggest that he was paid less than he was promised, or that he was paid less than other, similarly situated persons were paid because of gender stereotyping. (Cplt. ¶ 15) He does not allege that he was discharged prematurely from these short-term instances of employment, or that he was not promoted (whatever that might mean during the American Idol Contestant Search and its aftermath – I assume it would mean being chosen to appear as a real contestant on the show) as a result of gender stereotyping. He does not allege that he was transferred or reassigned due to gender stereotyping. He certainly does not allege that AIP failed to hire him because of gender stereotyping; indeed, the only fair inference one can draw from Benardo's allegations of fact is that he was hired for each appearance (and quite explicitly for the third) *only* because he presented as a flamboyantly gay man. And Benardo has not alleged retaliation. Therefore, he has not alleged any adverse employment action, and his non-hostile work environment gender discrimination claim must be dismissed.

### 2) *Benardo Fails to Allege a Viable Claim for Hostile Work Environment*

A hostile work environment for Title VII purposes arises when the workplace becomes "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)(internal quotation marks and citations omitted). This test accounts for the totality of the circumstances, Id. at 23, and "has objective and subjective elements: the misconduct shown must

---

[2] Allegations of harassment/hostile work environment are addressed separately.

be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Harris, 510 U.S. at 21, (1993)).

Hostile work environment claims, like other Title VII claims, are subject to the relevant statute of limitations. In New York, which is a joint filing state, a claim must be filed with an administrative agency (the EEOC or the New York State Division of Human Rights) within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000(e)(5)(e)(1). For discrete acts of discrimination, the "continuing violation" doctrine is inapplicable, and the 300 days is measured from the date when the discriminatory act – the failure to hire or promote, the termination – occurred.

However, because hostile work environment by its nature involves repeated conduct, in a normal employment situation a court looks to the entire time frame when the hostile environment existed, as long as one act contributing to the claim occurred within the 300 day filing period. Amtrak v. Morgan, 536 U.S. 101, 115 (2002). That would be the rule if this were an ordinary hostile work environment case, one involving a continuous period of work – or even a period of work with some interruption. But it is not such a case. The plaintiff was not continuously employed by AIP and subjected to harassment on a continuing basis. He was employed for a day (or a few days at most) on each of three separate occasions that were months or years apart (2006, 2007, 2010). Therefore, as far as this court is concerned, each of his claims of sexual harassment is a discrete claim about a discrete act that occurred during a discrete period of employment that ended almost as soon as it began. This means that the 300 days runs from the date the discrimination allegedly occurred. Benardo's one and only EEOC charge was not filed

7

within 300 days of his "employment" during the year 2006 or the year 2007, and any hostile work environment claim attributable to those days of employment is plainly time barred.

That leaves Benardo's claim that he was subjected to a hostile work environment during his appearance on Cowell's farewell show in 2010. The allegations of the complaint, if true, certainly establish that Benardo was harassed, and that the harassment was based on either his perceived homosexuality (which is not actionable under Title VII) or gender stereotyping (which is actionable).

However, Benardo has not pleaded facts tending to show that the ridicule and insult that he endured on the air "*altered* the conditions of his employment." Rather, the facts he pleads suggest that the on-air conduct toward plaintiff that was exhibited by Cowell and Cook during the show *was* the condition of his "employment" – i.e., Benardo was hired on the condition that he would present himself as flamboyantly gay so that he could be insulted by Cowell (who is known to be a master of insulting behavior, and who had insulted him during prior appearances) and his guests. Given the facts pleaded, the only plausible inference is that Benardo voluntarily consented to subject himself to the on-air conduct of Cowell and Cook. Benardo was, of course, free not to accept the offer to appear on the show on each occasion. He, like everyone else with a modicum of talent (or less) who auditions for American Idol, chose to appear on a program that was famous for its judges insulting behavior toward the lame, the halt and the talentless, knowing full well what was coming – if only because he had experienced it before. Benardo went on the air after being told what was expected of him, and he knew what to expect. Having volunteered to be insulted, he cannot now claim that he was sexually harassed

Since Benardo pleads not a single fact tending to show that his consent to appear on the show under the terms demanded was procured by the sort of victimization that Title VII sexual

8

harassment was designed to protect against, – specifically "discriminatory practices and devices which have fostered (sexually) stratified job environments," Gen. Elec. Co. v. Gilbert, 429 U.S. 125, 160 (1976), – his sexual harassment claim arising out of the on-air performance cannot possibly survive under Twombley/Iqbal.

As for the two off-air comments that are specifically pleaded in the complaint: they are deeply insulting, but they are not actionable under Title VII for several different reasons. First, both comments are quite explicitly about homosexuality (one refers to anal intercourse and the other uses a common epithet directed toward male homosexuals); Title VII does not bar discrimination based on homosexuality. Second, Title VII is not a civility code, Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998). Therefore, two despicable anti-homosexual comments simply do not rise to the level of actionable sexual harassment, especially as Benardo does not plead any facts from which one could infer that they so "permeated" his one day workplace as to "alter" his working conditions. Finally, the pleading does not contain any factual averment that would support a conclusion that AIP could possibly be liable for the comment made by a non-employee over whom it is not alleged defendant exercised (or could exercise) any control.

For these reasons, Benardo's Title VII claims are dismissed.

B. STATE AND CITY HUMAN RIGHTS LAW CLAIMS DISMISSED.

Because all of Benardo's federal claims are dismissed, I would ordinarily decline to exercise pendent jurisdiction over his claims under the state and city human rights laws and dismiss them without prejudice, so that he could bring them in a state court. However, in this case I will take the opportunity to dismiss those claims with prejudice as well.

9

*Conduct Occurring In California Is Not Actionable In New York*

Courts have consistently held that the NYSHRL does not apply to conduct by foreign corporations occurring outside the state of New York. Beckett v. Prudential Ins. Co. of Am., 893 F. Supp. 234, 238 (S.D.N.Y. 1995); Wilcox v. PRC of New York Ltd. P'ship., 95 Civ. 1292, 1997 WL 141682, at *4 (N.D.N.Y. Mar. 24, 1997)("those courts that have addressed this issue have unanimously held" there is no cause of action in such situations).

AIP is incorporated in California, but for the present purpose, a corporation's principal place of business determines its residency. Guzman v. Macy's Retail Holdings, Inc., No. 09-Civ-4472, 2010 WL 1222044, at *10 (S.D.N.Y. 2010). Though the complaint does not admit (as AIP suggests) that AIP's principal place of business is in California, neither does it allege facts sufficient to show that the corporation has its principal place of business in New York. Benardo implicitly concedes the point in his answer brief by describing AIP's "frequent contact" with and "substantial business" in New York, rather than on its status as a domestic (New York) or foreign corporation. Under existing law, however, the purported "nexus" between the California conduct and Benardo's original audition (which apparently occurred in New York) is not sufficient; it is, rather, AIP's status as a domestic or a foreign corporation that matters. AIP is not a New York corporation. Accordingly, Benardo's 2007 and 2010 claims under the NYSHRL are dismissed pursuant to Rule 12(b)(1).

Similarly, the NYCHRL applies only to conduct occurring in New York City. See., e.g., Pouncy v. Danka Office Imaging, 06 Civ. 4777, 2009 U.S. Dist. LEXIS 44752, at *40-41

10

(S.D.N.Y. May 19, 2009); Guzman, 2010 WL 1222044, at *11. To determine where the conduct occurred, "courts look at the location of the *impact* of the offensive conduct," Pouncy, 2009 U.S. Dist. LEXIS 44752, at *41 (quoting Germano v. Cornell Univ., 2005 U.S. Dist. LEXIS 17759, at *13 (S.D.N.Y. Aug. 17, 2005))(internal quotation marks omitted), but "the fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the City HRL." Salvatore v. KLM Royal Dutch Airlines, No. 98 Civ. 2450, 1999 U.S. Dist. LEXIS 15551, at *50 (S.D.N.Y. September 30, 1999) (dismissing NYCHRL hostile work environment claims where plaintiffs worked primarily outside New York City).

The only conduct that is pleaded as having taken place in New York City is Benardo's original audition; his every live television appearance, and all his promotional appearances, took place in California. But Benardo's original audition took place sometime before it was shown on television, and the audition aired in September 2006. Both the NYHRL and NYCHRL have three-year statutes of limitations. See Koerner v. State of N.Y., 467 N.E.2d 232, 234, 62 N.E.2d 442, 447 (N.Y. 1984)(NYHRL has three-year statute of limitation); 599 F. Supp. 2d 462, 474 (S.D.N.Y. 2009) (both NYHRL and NYCHRL have three-year statutes of limitation), so the claims arising out of the 2006 conduct, even if not otherwise barred, are plainly time-barred under both statutes.

### III. CONCLUSION

AIP's motion to dismiss is granted with prejudice. The Clerk is directed to removed Docket No. 4 from the Court's list of active motions.

Dated: June 21, 2011

11

_____
U.S.D.J.

BY EFC TO ALL COUNSEL